IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED

11:03 am, 1/29/21

Margaret Botkins
Clerk of Court

| | |
|---|---|
| CHUCK PETTI, PAUL SPIVAK, INTELLITRONIX CORP., et al, <br><br> Plaintiffs. <br><br> v. <br><br> CAMERON DALEY FRAKER, <br><br> Defendant. | Case No.  20-CV-156-ABJ <br> 20-CV-157-ABJ <br> 20-CV-158-ABJ |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendant Cameron Daley Fraker's Motion for Summary Judgment on Intellitronix Complaint. 20-CV-158, ECF No. 16. Having reviewed the filings and applicable law, the Court finds Defendant's Motion should be **DENIED**.

### BACKGROUND

These consolidated cases arise out of a dispute between Cameron Fraker, a distributor for U.S. Lighting Group ("USLG"), and Paul Spivak, the creator of U.S. Lighting Group. 20-CV-157, ECF No. 1 at 2. Intellitronix Corporation ("Intellitronix") is also a Plaintiff in these lawsuits, and Mr. Spivak is the sole officer of this corporation. 20-CV-158, ECF No. 1 at 2. Mr. Spivak is also an officer of USLG, and they deal in the business of commercial LED lighting. 20-CV-157, ECF No. 86 at 1. Mr. Fraker entered

1

into an agreement with USLG to distribute these lightbulbs. ECF No. 86-2. At some point, it appears Mr. Fraker began to have issues with the lightbulbs, which is essentially the root cause of all the issues currently being litigated.

On January 11, 2019, Mr. Spivak filed a complaint alleging defamation based on Mr. Fraker's post on a website called the Ripoff Report. *Id.* at 2-3. Mr. Spivak filed an Amended Complaint adding a claim for deceptive trade practices on February 14, 2019. ECF No. 4. The alleged defamatory post is titled "US Lighting Group USLG-Intellitronix Corp- Paul Spivak Paul Spivak Chuck Petti Olga Smirnova Bogus Warranty, Will not deliver on New Orders, Theft of Downpayments Eastlake Ohio" and it says:

> I placed an order with a $38,000 down payment in June of 2016. As of January 2018, I have still not received a single light bulb from the order. I've also had to replace the bulbs I sold prior to that order with bulbs from another manufacturer because USLG refuses to ship replacements despite recalling every bulb I sold. They've done this to every distributor. The president of the company has not returned a call in more than 6 months. I visited the facility in May 2017 in order to resolve the many issues I have with this manufacturer and despite me traveling 22 hours for the visit the owner spent a massive 15 minutes talking to me. They've refused to refund my down payment, refused to deliver on their warranty, and refused to deliver new product. I know from talking to other distributors that I'm not the only one and on top of that USLG accepted hundreds of thousands of dollars from distributors in the last 18 months in orders and distribution rights.

ECF No. 4-1. There was a correction for clarity posted that adds the phrase "in a timeframe that satisfies my customers' needs" to the portion of the original statement regarding the alleged refusal to deliver on the warranty. *Id.*

In response to Mr. Spivak's complaint, Mr. Fraker filed counterclaims for breach of contract, corporate veil/alter ego, fraudulent misrepresentation, fraudulent concealment, unjust enrichment, deceptive trade practices, abuse of process, and a violation of 28 U.S.C.

2

§ 1927 through filing a frivolous lawsuit and multiplying the proceedings unreasonably. ECF No. 14. Intellitronix also filed suit against Mr. Fraker, through the same counsel as Mr. Spivak, making identical claims as Mr. Spivak's original suit. ECF No. 108 at 5-6. USLG intervened in the consolidated cases as well. ECF No. 86. It added claims regarding breach of contract, tortious interference with business relations, misappropriation of trade secrets, libel, injurious falsehood, and deceptive trade practices against Mr. Fraker. *Id.*

The litigation originally took place in the United States District Court for the Northern District of Ohio, Eastern Division, until Magistrate Judge Baughman, Jr. transferred the case to the District of Wyoming while addressing the Motion to Dismiss filed by Defendant against USLG. ECF No. 108. The cases were transferred because USLG and Mr. Fraker had entered into a contract with a forum-selection clause dictating Wyoming should have jurisdiction; Magistrate Judge Baughman, Jr. found the clause applied to the claims involving USLG and Defendant and believed the other consolidated cases raised similar issues. *Id.* at 22-27. Ultimately, he transferred the consolidated cases in their entirety. *Id.* at 31.

Prior to transfer, there was a pending summary judgment motion against Intellitronix. 20-CV-158, ECF No. 16. Defendant filed this Motion in Ohio on January 13, 2020; however, Intellitronix failed to respond until January 19, 2021, over a year later. ECF Nos. 16 & 77. This Court graciously allowed Plaintiff to file a response in light of the confusion due to the cases being transferred, although a large part of the confusion was likely due to the multitude of motions filed by both Defendant and Plaintiffs, unnecessarily.

Defendant chose not to file a reply to Intellitronix's response. The Motion is now ripe for ruling.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *See Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). Once the moving party satisfies this initial burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the Court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the Court. *Id.* at 255.

## DISCUSSION

### A. Arguments

Defendant largely relies on the same arguments he made when requesting summary judgment on Plaintiff Spivak's claims. He claims he is entitled to summary judgment because his statements are not "of and concerning" Intellitronix because its name was not used in the body of the actual statement, it was only in the title of the post. ECF No. 16-1 at 10–11. Second, he claims his statements are not defamatory as a matter of law because they do not constitute defamation per se. *Id.* at 12. They do not import a charge of moral turpitude or infamous punishment, they do not claim Intellitronix has an offensive or contagious disease, and they do not subject Intellitronix to hatred or injure its occupation. *Id.* at 12-13

Defendant also claims his statements are "substantially true." *Id.* at 13. His statement that he did not receive a single bulb is substantially true even if he received some of the bulbs. *Id.* Further, if the president of the company actually returned his calls in two months instead of six months, and if their meeting lasted thirty minutes instead of fifteen minutes, the statements still do not pertain to Intellitronix. *Id.* at 14. He also notes he did not receive a refund on his down payment and other distributors did indeed experience similar issues as he claimed in his post. *Id.*

When considering a motion for summary judgment, the Court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the Court. *Id.* at 255.

## DISCUSSION

### A. Arguments

Defendant largely relies on the same arguments he made when requesting summary judgment on Plaintiff Spivak's claims. He claims he is entitled to summary judgment because his statements are not "of and concerning" Intellitronix because its name was not used in the body of the actual statement, it was only in the title of the post. ECF No. 16-1 at 10–11. Second, he claims his statements are not defamatory as a matter of law because they do not constitute defamation per se. *Id.* at 12. They do not import a charge of moral turpitude or infamous punishment, they do not claim Intellitronix has an offensive or contagious disease, and they do not subject Intellitronix to hatred or injure its occupation. *Id.* at 12-13

Defendant also claims his statements are "substantially true." *Id.* at 13. His statement that he did not receive a single bulb is substantially true even if he received some of the bulbs. *Id.* Further, if the president of the company actually returned his calls in two months instead of six months, and if their meeting lasted thirty minutes instead of fifteen minutes, the statements still do not pertain to Intellitronix. *Id.* at 14. He also notes he did not receive a refund on his down payment and other distributors did indeed experience similar issues as he claimed in his post. *Id.*

Lastly, Defendant explains his statements are opinion because the words "bogus warranty" are ambiguous, and his other statements regarding whether he paid for his orders, received bulbs and a refund, and whether other distributors had similar issues are not verifiable. *Id.* at 16-17. Further, the statements are subjective, and the context of the statements is that he was ripped off, which is his opinion. *Id.* at 18.

Defendant also claims the deceptive trade practices claim should be dismissed because Intellitronix did not do business with him. *Id.* at 19. In relation to both claims, Defendant argues punitive damages are not warranted because his actions were not malicious, as the Complaint acknowledges the report was written and published negligently without malice or knowledge of its falsity. *Id.* at 20.

Defendant also claims Intellitronix is a public figure, and as such, is required to prove actual malice. *Id.* at 7. Defendant believes Intellitronix is a public figure because of its website that claims it is an international leader and sells its products globally. *Id.* at 8. He further argues Intellitronix cannot prove he made the statements while knowing they were false. *Id.* at 9.

Intellitronix relies on the same arguments it made in its motion for summary judgment on these claims and on Plaintiff Spivak's brief in opposition to Defendant's motion for summary judgment. ECF No. 77 at 1. It counters the statements are false because Defendant received new and replacement bulbs, despite saying he never received any of them. 20-CV-157, ECF No. 93 at 2. Further, it argues Defendant stated he did the same thing to every distributor, while only providing an affidavit from one other distributor. *Id.* at 12. Intellitronix claims Defendant intentionally named it in the report and

6

the report is clearly "of and concerning" the company because there is no distinction between it and Mr. Spivak. *Id.* at 9-10. Intellitronix also claims the statements are defamation per se because they were made with the intent to harm its trade and profession and accused the company of theft and fraud, which are crimes of moral turpitude. *Id.* at 11. It further explains the statements are not opinions because they can be verified, even if the reader himself cannot verify them easily. *Id.* at 15.

Intellitronix believes Defendant has not shown he properly submitted a warranty claim such that he could claim the warranty is bogus, and the statement regarding the refund is false because there was no refund request, and he was not entitled to a refund. ECF No. 104 at 8-9. Further, Intellitronix urges the Court to presume Defendant's failure to produce evidence of unreturned phone calls and further evidence regarding the bulbs means there is no merit to the claims. *Id.* at 9-10.

The only new argument raised by Intellitronix is regarding the public figure issue. Intellitronix argues it is not a public figure, and the only evidence Defendant relies on to make this argument are marketing statements made on its website, which is insufficient. 20-CV-158, ECF No. 77 at 3. In the event the Court finds Intellitronix is a public figure, it argues this Court already found there is a genuine dispute of material fact relating to Defendant's intent in making the allegedly defamatory posting.[1] *Id.* at 4.

---

[1] The Court notes its finding that there was a genuine dispute of material fact regarding Defendant's intent in publishing the Ripoff Report has nothing to do with the actual malice standard related to defamation cases. Intellitronix mischaracterizes the Court's order. The Court was referring to malice for punitive damages, not the actual malice standard for defamation cases; these are two completely different things.

7

Since Intellitronix argues the defamation claim should not be dismissed, it likewise argues the deceptive trade practices claim should stand. 20-CV-157, ECF No. 93 at 17. Further, it argues punitive damages are proper for both claims because Defendant admitted he posted the report to get the parties back to the bargaining table, and he knew Plaintiffs' customers would read the report. *Id.*

### A. Choice of Law

First, the Court must determine which law applies. As a general principal "[i]n diversity cases, the Erie doctrine instructs that federal courts must apply state substantive law and federal procedural law." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017). These consolidated cases were in front of the District of Ohio on diversity of citizenship jurisdiction; therefore, the Court will apply federal law to procedural issues and state law to the substantive issues.

However, because the case was transferred from Ohio, the Court must determine what state's substantive law applies. "[W]hen a case is transferred … the transferee court must apply the same law as applicable in the transferor court…" *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515-16 (10th Cir. 1991). The Ohio District Court transferred the cases to this Court; it had jurisdiction under diversity of citizenship and was applying Ohio state law to the claims. ECF No. 1. However, Magistrate Judge Baughman, Jr. transferred this case because of the forum-selection clause in the Distribution Agreement. ECF No. 108.

The Distribution Agreement between USLG and Mr. Fraker contained a forum-selection clause and choice of law provision.[2] ECF No. 128-1. The choice of law provision says: "[t]his Agreement shall be governed by and construed under the laws of the United States of America and the State of Wyoming…." *Id.* at 4. The contractual parties incorporated the forum-selection clause into the provision regarding choice of law, and it says: "[j]urisdiction for resolution of any disputes arising in connection with this Agreement shall be vested in the state and federal courts located in the state of Wyoming." *Id.* This portion of the Distribution Agreement is unclear when read together because the contractual parties used different phrases to dictate choice of law and forum. These two phrases can be construed differently; the phrase "arising in connection with" is significantly broader than the phrase "governed by and construed." Thus, the choice of law section appears to be narrower than the forum selection portion; this makes it difficult to read the two sections of the contractual clause together.

The plain language of the Distribution Agreement gives this Court jurisdiction over all the claims that "arise in connection with" the Agreement, but only instructs the Court to apply Wyoming law to those claims that require the Court to construe the Distribution Agreement. Although this will require the application of Wyoming law to some claims and Ohio law to other claims (because it is the law the transferor court applied), the plain language of the Distribution Agreement appears to compel this result. Therefore, the Court will only apply Wyoming law to those claims requiring it to "construe" the Agreement.

---

[2] Intellitronix would likely be bound by the forum selection clause because it "is so closely related to the dispute that it is foreseeable that [it] will be bound." *Keehan Tennessee Invest., L.L.C. v. Praetorium Secured Fund I, L.P.*, 71 N.E.3d 325, 333 (Ohio App. 2016).

The issues pending before the Court do not require it to construe the Distribution Agreement. The Court must determine whether it is true Mr. Fraker paid a down payment, whether he received light bulbs, whether he replaced the bulbs, whether USLG refuses to ship replacements, whether it recalled all the bulbs, and what other distributors experienced. Also, it must determine whether Mr. Spivak returned calls, whether Mr. Fraker visited the facility, traveling 22 hours and only got to speak to someone for 15 minutes, whether USLG refunded the payment, whether it delivered on the warranty and delivered new bulbs, and whether USLG accepted money from other distributors in the last 18 months. None of this requires the Court to look at the Distribution Agreement; in order to substantiate these claims, Defendant would have to provide evidence outside of the Agreement. While Defendant's Ripoff Report does arise out of his business relations with USLG under the Distribution Agreement, the Court does not have to "construe" the Agreement to rule on these matters. Therefore, Ohio law will apply to the current analysis because it is the law the transferor court applied, and the Distribution Agreement does not require the application of Wyoming law in these circumstances.

### B. Defamation Claim

The Court finds Intellitronix's defamation claim should not be dismissed. First, reasonable jurors could conclude the post is "of and concerning" Intellitronix. Whether a statement is "of and concerning" an entity "turns on whether the receiver of that statement understood the statement to refer to [that entity]." *Murray v. Kight-Ridder, Inc.,* 2004-Ohio-821 at ¶ 91. Intellitronix was referred to in the title of the post but was never expressly referenced in the body of the post like Mr. Spivak was as the "president of the company"

10

or the "owner." However, when looking through the eyes of the reader, the post could reasonably be understood to be "of and concerning" Intellitronix.

Although a majority of the sentences within the body of the post expressly refer to USLG or "the president of the company" or the "owner," none of which is Intellitronix, the title and certain phrases could still lead to the conclusion it is about Intellitronix. The post says, "they've done this to every distributor" and "they've refused to refund my downpayment...." Because the title expressly references Intellitronix and these sentences use the term "they," a reasonable reader could conclude "they" includes Intellitronix.

Further, the title references Intellitronix in conjunction with USLG, separated by a hyphen. A reasonable reader may believe USLG and Intellitronix are connected, and as such, any statements about USLG may be attributed to Intellitronix. Ultimately when read altogether, a reasonable juror could conclude the statements are "of and concerning" Intellitronix because Defendant did not distinguish who he was referring to when he said "they," and he also insinuated there is a connection between USLG and Intellitronix such that a reasonable reader might attribute statements made about USLG to Intellitronix.

A jury could also find the statements are defamatory. Defamation per se includes statements within the following categories: "words which import an indictable criminal offense involving moral turpitude; words which impute a loathsome or contagious disease which excludes one from society; or words which tend to injure one in his trade or business occupation." *Dunnigan*, 2002-Ohio-5548, at ¶ 35. Looking at the content of the post itself, reasonable jurors could conclude the statements tend to injure Intellitronix's business because they discuss Defendant's allegedly poor business experiences, and as discussed

11

above, a reader may interpret this to include Intellitronix. Reasonable jurors could conclude a reader would see this post and avoid conducting business with Intellitronix.

As discussed in a prior order, the statements may or may not be considered substantially true. Defendant said USLG had done the same thing to every distributor, but only has an affidavit from one distributor and another Ripoff Report post from one former distributor, while USLG has numerous distributors. Reasonable jurors could conclude this is not substantially true. Further, Defendant claims his phone calls were not returned, but Plaintiffs claim they were in regular contact. 20-CV-158, ECF No. 27-1 at 7. This is clearly disputed, and neither party has provided the Court with admissible evidence that the statement is true or false.

Lastly, the Court cannot definitively determine whether the statements are expressions of opinion and not actionable because reasonable jurors may conclude they are not. When determining whether statements are opinion, the Court must look to "the specific language used, [] whether the statement is verifiable, [] the general context of the statement, and [] the broader context in which the statement appeared." *Scott v. News-Herald*, 496 N.E.2d 699, 706 (Ohio 1986).

First, when looking at the specific language used, a large majority appears to be factual in nature. While some statements may constitute hyperbole like "bogus" and "theft," the majority of the statements seem to be factual in nature. Next, while the statements may not be easily verifiable, the test is whether a reasonable reader could believe the statement has specific factual content. *See Scott*, 496 N.E.2d at 707. Here, a reasonable reader could believe statements like "I have still not received a single light bulb

12

…" or "they've refused to refund my down payment" are factual because it is either true or false that Defendant received the light bulbs or received a refund. The large majority of the post contains statements similar to these, so a reasonable reader would likely believe the statements are verifiable.

Lastly, looking at the context of the statement and where the statement appears, it still appears to be factual. While the statements were posted on a site where people claim they have been ripped off, which is arguably an opinion, they provide factual statements to explain how they have been ripped off, as Mr. Fraker did here. Therefore, reasonable jurors could conclude the statements are not opinion.

Defendant also argues Intellitronix cannot prove the requisite degree of fault because it is a public figure and was required to prove actual malice. ECF No. 16-1 at 7. For the purposes of a defamation action "[a] public figure is a person whose position or activities thrust him into the center of an important public controversy." *Kassouf v. Cleveland Magazine City Magazines*, 755 N.E.2d 976, 982 (Ohio Ct. App. 2001). Defendant merely relies on Intellitronix's website to claim it is a public figure because the website discusses Intellitronix's business as an international leader selling products globally. ECF No. 16-1 at 8. This is not sufficient to show Intellitronix is a public figure. Defendant has not addressed how Intellitronix "thrust" itself into an important public controversy; he has not even stated what the public controversy is. Defendant is not entitled to summary judgment on the Intellitronix's defamation claim.

### C. Deceptive Trade Practices Claim

Defendant is also not entitled to summary judgment on Intellitronix's deceptive trade practices claim. The sole reason Defendant urges this Court to dismiss the claim is because "[a]ccording to Intellitronix, it did not do business with Fraker." ECF No. 16-1 at 19. The relevant statute says: "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person … disparages the goods, services, or business of another by false representation of fact." OHIO REV. CODE. ANN. § 4165.02(10). Liability under this statute hinges on whether, in the course of his/her business, the person disparages the goods/business of another; nothing in that language requires the parties to actually conduct business together, and Defendant has failed to provide any case law proving otherwise.

Nonetheless, at this point it is unclear whether Defendant and Intellitronix conducted business with each other. Intellitronix claims they never did business with Defendant. ECF No. 77 at 3. Defendant takes an inconsistent position on the issue, in his declaration he clearly stated he went to the USLG/Intellitronix factory, he communicated with employees of Intellitronix, and he even claims he had a business relationship with Intellitronix through USLG. ECF No. 16-4 at 2–4. But now Defendant appears to be claiming he did not do business with Intellitronix in order to get the deceptive trade practices claim dismissed. ECF No. 16-1 at 19. In light of the discrepancies in these issues, the Court cannot determine whether Intellitronix and Defendant conducted business on summary judgment.

### D. Punitive Damages Request

Intellitronix also made a request for punitive damages. ECF No. 1-1 at 3. In Ohio, punitive damages are available when there is malice, which means a "state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v.* Murty, 512 N.E.2d 1174, 1176 (Ohio 1987). Defendant is not entitled to summary judgment on the punitive damages request because he failed to come forward with any admissible evidence showing there is no genuine dispute of material fact regarding the issue. He merely claims Intellitronix's Complaint says it believes the report was "published negligently without malice or knowledge of its falsity." ECF No. 16-1. This statement relates to the degree of fault that must be pled in defamation cases, not the issue of malice in relation to punitive damages. Further, just because the Complaint says Intellitronix is "informed and believes" the report was not published with malice, does not mean it admits there was no malice for punitive damages. Thus, Defendant is not entitled to summary judgment on punitive damages.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is hereby **DENIED**.

Dated this 29th day of January, 2021.

Alan B. Johnson
United States District Judge